354 So.2d 313 (1977)
In re Heflin Mack LANGFORD
v.
STATE of Alabama.
Ex parte Heflin Mack Langford.
SC 2623.
Supreme Court of Alabama.
November 10, 1977.
Rehearing Denied January 6, 1978.
*314 Maury D. Smith, Sterling G. Culpepper, Jr., Charles S. Coody, Montgomery, for petitioner.
William J. Baxley, Atty. Gen. and Mary Jane LeCroy, Asst. Atty. Gen., for the State, opposed.
James H. Evans, Dist. Atty., 15th Jud. Circuit, in opposition to petition for Writ of Certiorari, amicus curiae.
John D. Whetstone, Executive Director, Montgomery, Office of Prosecution Services, adopts brief of James H. Evans, amicus curiae.
JONES, Justice.
This case, before the Court upon writ of certiorari, involves a review of a conviction of murder in the first degree for the homicide of an individual by an automobile driver under the influence of alcohol. Whether one may be convicted of murder in the first degree under such circumstances is a question which has never been decided by this Court. The Court of Criminal Appeals affirmed the judgment rendered by the trial Court. We reverse and remand.
On June 24, 1975, Heflin Mack Langford, Petitioner, was involved in an automobile collision which resulted in the death of sixteen-year-old Randall Holt. Langford's automobile struck a mileage marker on the right side of a four-lane highway in Montgomery County, swerved to the left and crossed the median. It collided with Holt's automobile, which was traveling in the opposite direction, and killed Holt instantly.
The extent to which Langford had been drinking was in dispute. Several witnesses stated that alcohol could be smelled on his breath; and it was shown that his blood-alcohol level was 0.25 per cent. Furthermore, witnesses testified that they had seen Langford's car traveling in excess of 90 miles per hour immediately preceding the collision.
In response to this evidence, Langford stated that he had consumed only "two beers" and was not intoxicated. He stated that mechanical steering problems had caused his loss of control of the vehicle.
The jury was charged as to the law involved, and no exceptions or objections were taken, except for an adverse ruling to Langford's motion for directed verdict at the close of the evidence. The jury found Langford guilty of murder in the first degree and he was sentenced to life imprisonment. It was in this posture, then, that the Court of Criminal Appeals addressed the merits of the defendant's contention that the evidence was insufficient to support a conviction of murder in the first degree. That Court affirmed, holding:
"Although a case of first impression, and while a very close question of whether Langford's gross and wanton misconduct rises to the degree necessary to show universal malice by evidencing a `depraved mind regardless of human life,' . . . the evidence was sufficient to present a jury question in that regard."
Our grant of the petition for writ of certiorari was limited to a review of that holding.
Langford contends that an individual cannot be convicted of murder in the first degree where the facts show only that he determined to, and did, drive an automobile which was involved in a collision which caused the death of an individual, even though the driver had knowledge of his own intoxication. We agree.
The applicable statute, Tit. 14, § 314, Code, provides:

*315 Every homicide, perpetrated by poison, lying in wait, or any other kind of wilful, deliberate, malicious and premeditated killing; or committed in the perpetration of, or the attempt to perpetrate, any arson, rape, robbery, or burglary; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life, is murder in the first degree . . . (Emphasis added.)
Langford was charged and convicted of the fourth type of first-degree murder (the emphasized segment).
It is settled that, in appropriate circumstances, a homicide committed by an intoxicated driver of an automobile may be murder. Hyde v. State, 230 Ala. 243, 160 So. 237 (1935); Berness v. State, 38 Ala.App. 1, 83 So.2d 607 (1953); and Reed v. State, 25 Ala.App. 18, 142 So. 441 (1932). This, however, does not satisfy the inquiry before us; and this for the reason that this State has two degrees of murder, and a determination that a conviction of murder may be appropriate does not necessarily assure the appropriateness of a conviction of murder in the first degree. Tit. 14, § 314, Code. See also Commonwealth v. McLaughlin, 293 Pa. 218, 142 A. 213 (1928).
Justice Stone, in Mitchell v. State, 60 Ala. 26 (1877), stated:
". . . the legislature, in this [fourth] clause, intended to raise to the high grade of murder in the first degree those homicides which are the result of what is called `universal malice.' By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim." 60 Ala. at 30. (Emphasis added.)
The word "determines" presupposes that some mental operation has taken place; the reasoning faculty must be called into play. State v. Massey, 20 Ala.App. 56, 100 So. 625 (1924). See also Curlette v. State, 25 Ala.App. 179, 142 So. 775 (1932).
"If one knowingly and consciously drives a high-powered automobile . . at an excessive rate of speed into a railroad train moving over a street crossing, knowing that the train is moving over the crossing, and that the automobile will strike the train, and that death will probably result to one or more occupants of the car, although without any preconceived purpose to deprive any particular person of life, but with a reckless disregard of human life, and death results from such act, the driver of the automobile may be guilty of murder in the first degree under the fourth division . . If he did not know that he was driving the automobile into the train, and he did not determine to drive it into the train regardless of consequences, but if the act of so driving it was purely accidental, but while in the commission of an unlawful act, such as driving along a public highway at a reckless rate of speed, or exceeding the speed limit, the offense would be manslaughter." 20 Ala.App. at 58, 100 So. at 627. (Emphasis added.)
See also Jackson v. State, 239 Ala. 38, 40, 193 So. 417 (1940); Mitchell, supra; Blashfield, Cyclopedia of Automobile Law and Practice, § 5378 (1950); and Huddy, Cyclopedia of Automobile Law, "Criminal Offenses," § 35 (9th Ed., 1931).
As Langford has correctly pointed out, in the instant case, the defendant determined only to drive upon the highway after drinking. There is no showing that he determined to have a collision; nor is there any evidence that he realized the likelihood of a collision; and the consequent taking of human life, and proceeded in the face of such probabilities.
The State has cited various cases where an intoxicated driver was found guilty of murder. See Nixon v. State, 268 Ala. 101, 105 So.2d 349 (1958); Berness, supra; Reed, supra; and State v. Trott, 190 N.C. 674, 130 S.E. 627 (1925). It should be noted, however, *316 that no case has been cited, or found, wherein an intoxicated automobile driver was found guilty of murder in the first degree. As to second degree murder, however, see Hyde, supra; Williams v. State, 30 Ala.App. 437, 7 So.2d 511 (1942); Massey, supra; Clemon v. State, 218 Ga. 755, 130 S.E.2d 745 (1963); Edwards v. State, 202 Tenn. 393, 304 S.W.2d 500 (1957); Shorter v. State, 147 Tenn. 355, 247 S.W. 985 (1923); and Montgomery v. State, 178 Wis. 461, 190 N.W. 105 (1922).
The classic examples of universal malice include shooting into an occupied house, and driving an automobile into a crowd. Massey, 20 Ala.App. at 58, 100 So. 625. While these examples are not exhaustive, they do illustrate the parameter of the type factual situation wherein such malice may be found or implied. We do not believe that the facts before us are within the ambit of the degree of malice exemplified by the abovestated circumstances.
We hold that the trial Court erred in not granting the motion for directed verdict as to the charge of murder in the first degree. As to all lesser included offenses, however, the evidence was sufficient for submission to the jury. The judgment of the Court of Criminal Appeals is reversed with instructions to remand the cause for a new trial not inconsistent with this opinion.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, FAULKNER, ALMON, SHORES and EMBRY, JJ., concur.
MADDOX and BEATTY, JJ., dissent.
MADDOX, Justice (dissenting).
I think the Court of Criminal Appeals was absolutely correct in this case by upholding a jury's determination that the defendant was guilty of murder in the first degree. As Judge Bookout points out in his special concurrence, there have been several cases where drivers of automobiles have been indicted for murder in the first degree and the jury has convicted for second degree, but this is the first time that this Court has held, as a matter of law, that a jury could not find a person guilty of murder in the first degree when he had done what Langford did here. I think the majority has erred.
The law of this case is contained in Reed v. State, 25 Ala.App. 18, 142 So. 441 (1932); certiorari denied, 225 Ala. 219, 142 So. 442 (1932). Reed was indicted for first degree murder. The jury found him guilty of second degree murder. From the opinion is the following:
"The court delivered an able and explicit charge to the jury covering every phase of the law applicable to this case. No exception was reserved to this charge, nor was it subject to objection and exception. Among other things, the court charged the jury: ` * * * If a person driving an automobile along the public highway knew that he was intoxicated, and, with that knowledge and the knowledge of other persons present on the highway, should proceed to drive the car in a highly reckless manner and operate the car in such manner as to be greatly dangerous to the lives of others and thus evidencing a depraved mind and regardless of human life, then you might consider that fact in determining whether or not the operator of the car was guilty of murder.' * * *"
In Nixon v. State, 268 Ala. 101, 105 So.2d 349 (1958), this Court, commenting on the earlier Reed case, stated:
"The earliest case which we have found in this jurisdiction in which a conviction for murder in the second degree caused by an automobile was affirmed is Reed v. State, 25 Ala.App. 18, 142 So. 441, 442, certiorari denied, 225 Ala. 219, 142 So. 442. The indictment was for murder in the first degree. As to the oral charge of the trial court in that case, the Court of Appeals said:
"`The court delivered an able and explicit charge to the jury covering every phase of the law applicable to this case. No exception was reserved to this charge, nor was it subject to objection and exception. * * * `
*317 "We have examined the original record in the Reed case and find that in pertinent part the trial court charged as follows:
"`Now, gentlemen, the other methods by which murder in the first degree conceivably could be committed in a case of this sort would be, as stated to you, when a person commits an act that is greatly dangerous to the lives of persons present, evidencing a depraved mind and regardless of human life, although the act is done without any preconceived purpose to deprive the deceased of lifethe defendant would be guilty of murder in the first degree.'
"While the charge in the Reed case does not comply strictly with the statutory definition in that the charge characterizes the act as having been done without intention to deprive `the deceased' of life, where the statute employs the term `any particular person,' both charge and statute declare that the facts hypothesized constitute murder in the first, not in the second, degree. See, also, Johnson v. State, 203 Ala. 30, 33, 81 So. 820, where a written charge given at the request of the state was held to be a correct definition of the fourth class of murder in the first degree." (emphasis supplied.)
The jury here was sufficiently charged on the fourth class of murder in the first degree. It was a jury question whether Langford drove an automobile along a public highway knowing he was highly intoxicatedthe evidence was conflicting. It was a jury question whether he knew other persons were present on the highway. It was a jury question whether he proceeded to drive the car in a highly reckless manner and operated it in such a manner as to be greatly dangerous to the lives of others. It was a jury question whether he had a depraved mind and did this without regard to human life.
The majority has substituted its determination of the facts for that of the jury by holding as a matter of law that first degree murder was not proved. Consequently, I dissent.
BEATTY, J., concurs.