BOWEN, Judge.
The appellant, Roderick Woods, was convicted of murder and was sentenced to 20 years’ imprisonment. He raises two issues on this appeal from that conviction.
The 14-year-old appellant was a student at Hayes Middle School in Birmingham, Alabama. On the morning of November 14, 1990, following an altercation between the appellant and another student, the appellant fired at least two shots from a .22 caliber pistol into a crowd of students on the school campus. One of those bullets struck and killed 11-year-old Secoria Weatherly.
I.
The appellant was convicted of reckless murder as defined in Ala. Code 1975, § 13A-6-2(a)(2),[1] which is a Class A felony, § 13A-6-2(c). Section 13A-5-6(a)(4) provides that the sentence for a Class A felony “in which a firearm or deadly weapon was used or attempted to be used in the commission of the felony, [shall be] not less than 20 years.” The appellant argues that this mandatory minimum 20-year sentence does not apply to him because his conduct was “reckless” and not “intentional.”
It is settled in this state that the sentence enhancement provisions of § 13A-5-6(a)(4) and (a)(5) apply only where there is a finding that a defendant intentionally used or attempted to use a firearm to commit the felony. Ex parte McCree, 554 So.2d 336 (Ala.1988). Consequently, those enhancement provisions may not be applicable where a defendant’s reckless or negligent conduct results in manslaughter. Ex parte McCree, 554 So.2d at 340-41.[2] See also Pardue v. State, 571 So.2d 320, 327-28 (Ala.Cr.App.1989), reversed on other grounds, 571 So.2d 333 (Ala.1990); Robinson v. State, 549 So.2d 136, 137-38 (Ala.Cr.App.1988). “[T]he use of the deadly weapon to commit the underlying felony is the classic situation intended by the legislature to invoke the enhanced penalty.” McCree, 554 So.2d at 341 (emphasis in original).
“Reckless” murder and “reckless” manslaughter do not involve the same degree of “recklessness.”
“The difference between the circumstances which will support a murder conviction and the degree of risk contemplated by the manslaughter statute is one of degree, not kind.... [I]t appears that the degree of recklessness which will support a manslaughter conviction involves a circumstance which is a ‘gross deviation from the standard of conduct that a law-abiding person would observe in the actor’s situation,’ but is not so high that it cannot be ‘fairly distinguished from’ the mental state required in intentional homicides.”
Ex parte Weems, 463 So.2d 170, 172 (Ala.1984).
In “reckless” or “universal malice” murder, “the defendant evinces a culpable mind, determined to act no matter what the consequences to others. He must have determined to follow a course of action which he knows, or should know, will, in all probability, lead to harm to another.” Napier v. State, 357 So.2d 1011, 1014 (Ala.1978). “The word ‘determines’ presuppos *1212 es that some mental operation has taken place; the reasoning faculty must be called into play.” Langford v. State, 354 So.2d 313, 315 (Ala.1977).
“In providing that homicide committed ‘recklessly under circumstances manifesting extreme indifference to human life’ constitutes murder, the drafters of the model code were attempting to define a degree of recklessness ‘that cannot be fairly distinguished from homicides committed purposely or knowingly.’ Model Penal Code and Commentaries, § 210.02, Comment, 4 (1980).”
Ex parte Weems, 463 So.2d at 172. Consequently, a required element of “reckless” or “universal malice” murder involving the use of a firearm is that the defendant “determined” or intended to use the firearm.
In convicting this appellant of “reckless” murder, the jury necessarily determined that the appellant knew that he was firing the pistol into a crowd of students, that he knew that a bullet would strike one of those students, and that he knew that death to some student would probably result. See Langford, 354 So.2d at 315, quoting State v. Massey, 20 Ala.App. 56, 58, 100 So. 625, 627 (1924)[3]. That determination satisfied the “intent” requirement and authorized the sentence enhancement provision of § 13A-5-6(a)(4).
II.
The appellant’s contention that the evidence does not support his conviction for reckless murder is without merit. This argument is grounded on the trial court’s reaction to one of the prosecution's requested jury instructions. That particular instruction was based on the following statement found in King v. State, 505 So.2d 403, 407 (Ala.Cr.App.1987):
“Section 13A-6-2(a)(2) requires the prosecution to prove conduct which manifests an extreme indifference to human life, and not to a particular person only. Its gravamen is the act of reckless[ness] by engaging in conduct which creates a grave or very great risk of death under circumstances ‘manifesting extreme indifference to human life.’ What amounts to ‘extreme indifference’ depends on the circumstances of each case, but some shocking, outrageous, or special heinousness must be shown.”
The trial judge indicated that he intended to give the requested charge and the following occurred:
“THE COURT: Well, I don’t mind giving these [requested instructions], as they’re here. I had intended to eliminate a few of the wording [sic] in there, such as ‘special heinousness must be shown.’ I’m not aware of any evidence of special heinousness in this instance.”
“MR. BOUDREAUX [defense counsel]: Your Honor, but I would renew my motion for judgment of acquittal, and, as additional grounds, assign that universal malice requires shocking, outrageous, and special heinous conduct, of which there’s been no proof beyond a reasonable doubt.
“THE COURT: Well, if we argued the semantics of the definition of heinousness, then counsel may be correct, but that is not the only definition of heinous. I was thinking from the jury’s standpoint, I did not want to confuse them. However, I don’t mind giving — they accurately depict applicable law in this case, because they came from specific cases.
“MR. BOUDREAUX: I do not object to them.” R. 572-73.
“The textbook examples of universal malice are generally such acts as shooting into an occupied house or driving an automobile into a crowd.” Napier, 357 So.2d at 1014. Shooting into a crowd is another *1213 classic example of universal malice. Massey, 20 Ala.App. at 58, 100 So. at 627. “The function of this section [§ 13A-6-2(a)(2) ] is to embrace those homicides caused by such acts as ... shooting a firearm into a crowd....” Northington v. State, 413 So.2d 1169, 1172 (Ala.Cr.App.1981), cert. quashed, 413 So.2d 1172 (Ala.1982).
Here, the appellant was charged with both intentional murder and universal malice murder as those crimes are defined in § 13A-6-2. The jury, by its verdict, rejected the theory that the appellant was shooting at a particular person. We find that the appellant’s conduct in shooting a firearm into a crowd of students did manifest an extreme indifference to human life in general. The appellant engaged in reckless conduct that created a grave risk of death under circumstances manifesting extreme indifference to human life. His conviction is supported by the evidence.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.

. A person commits the crime of reckless murder if “[u]nder circumstances manifesting extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to a person other than himself, and thereby causes the death of another person." § 13A-6-2(a)(2).

. In Ex parte McCree, 554 So.2d 336, 341 (Ala.1988), the Alabama Supreme Court limited its holding as follows: “Whether every manslaughter conviction would require the same holding as here (the inapplicability of § 13A-5-6(a)(5)), we need not decide. But, under the facts of the instant case, the jury’s verdict of manslaughter (pursuant to § 13A-6-3(a)(l)) necessarily precluded any finding that McCree possessed the requisite intent to use his firearm in the commission of the felony with which he was charged and convicted." (Emphasis in original.)

. '"If one knowingly and consciously drives a high-powered automobile ... at an excessive rate of speed into a railroad train moving over a street crossing, knowing that the train is moving over the crossing, and that the automobile will strike the train, and that death will probably result to one or more occupants of the car, although without any preconceived purpose to deprive any particular person of life, but with a reckless disregard of human life, and death results from such act, the driver of the automobile may be guilty of murder in the first de-gree_(Emphasis supplied in Langford.)